IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS CHRISTOPHER DUFFY, : <br> Plaintiff, : <br> v. : <br> ANDREW SAUL, : <br> Commissioner of Social Security,* : <br> Defendant. : | CIVIL ACTION NO. 17-4713 |

## ORDER

Plaintiff Thomas Christopher Duffy filed this action pursuant to 42 U.S.C. § 405(g), requesting judicial review of the final decision of the Commissioner of the Social Security Administrator that denied his claim for Disability Insurance Benefits under Title II of the Social Security Act. The Court referred the case to United States Magistrate Judge Jacob P. Hart, who has issued a Report and Recommendation ("R&R") that Plaintiff's request for review should be granted and the case remanded.[1] The Commissioner has filed objections to the R&R,[2] to which Plaintiff has responded.[3] For the reasons discussed below, the objections will be overruled and the R&R will be adopted.

### I. BACKGROUND

On January 23, 2014, Duffy filed an application for Disability Insurance Benefits[4] asserting a disability on the basis of bipolar disorder.[5] After an initial denial, he sought a hearing before an Administrative Law Judge ("ALJ").[6] The ALJ denied benefits, concluding that Duffy "was not under a disability, as defined in the Social Security Act, at any time from July 1, 2012,

---

* Substituted pursuant to Fed. R. Civ. P. 25(d).
[1] Doc. No. 14.
[2] Doc. No. 15.
[3] Doc. No. 17.
[4] R. at 245.
[5] R. at 154.
[6] R. at 170.

the alleged onset date, through March 30, 2016, the date last insured."[7] This decision was based on the ALJ's finding that Duffy had the "residual functional capacity to perform a full range of work at all exertional levels" with several specified "nonexertional limitations."[8] The Appeals Council denied Duffy's request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner.[9] Duffy then filed this action.

In determining Duffy's residual functional capacity ("RFC"), the ALJ relied on the medical opinions in the record, as the regulations require.[10] The record contains medical opinion evidence concerning Duffy's mental condition from four doctors—two treating physicians, a one-time examining physician, and a non-examining agency medical expert.

Dr. John Mitchell was Duffy's psychiatrist for over 14 years. Dr. Mitchell completed a Medical Source Statement on December 18, 2015, in which he indicated that Duffy had a poor ability to maintain concentration and attention for extended periods, perform activities within a schedule, sustain an ordinary routine without special supervision, perform at a consistent pace, or complete a normal workday or workweek.[11] Dr. Mitchell also explained that Duffy had a poor ability to interact appropriately with the public, respond appropriately to changes in the work setting, or set realistic goals or make plans independently of others.[12]

In a letter dated January 4, 2016, Dr. Mitchell wrote that Duffy's "ability to function outside of the home is severely limited and compromised" and that Duffy's functioning would

---

[7] R. at 17.
[8] R. at 21. In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. § 404.1520; *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir.1999). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. § 404.1520(a)(4). This appeal concerns step four, which requires the Commissioner to determine whether the claimant retains the RFC to perform his past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv); *Plummer*, 186 F.3d at 428.
[9] R. at 1.
[10] R. at 21 (citing 20 CFR 404.1527).
[11] R. at 710; *see also* Doc. No. 14 at 5.
[12] R. at 711; *see also* Doc. No. 14 at 5.

2

collapse if placed in a job setting.[13] Dr. Mitchell further explained that Duffy "is devoutly religious but becomes obsessed with religious rituals dominating his wakeful hours" and that Duffy's "concentration and problem solving abilities have been severely compromised by his condition and the medications he needs to take."[14] According to Dr. Mitchell, Duffy referred to "clickies" in his mind which were indicative of his "psychotic thought process."[15] Dr. Mitchell concluded that "[i]t is my medical opinion that Mr. Duffy is totally disabled."[16]

The R&R compared Dr. Mitchell's medical opinions to his treatment records—which were added to the file on March 17, 2014[17]—and determined that "Dr. Mitchell's opinions were also supported to some extent by his treatment notes, which reflect a religious preoccupation," frequently describe him as "anxious," and, "[o]ften, Dr. Mitchell found [Duffy's] thought process or content to be abnormal, with preoccupations, compulsions and/or obsessions.[18] At the same time, the R&R explained that there was some inconsistent evidence in Dr. Mitchell's treatment notes including that "Dr. Mitchell almost invariably described Duffy as fully oriented, calm, cooperative and well-kempt, with normal speech form and content."[19]

Dr. Edward Lundeen, a treating clinical psychologist who provided couples counseling to Duffy and his wife, wrote that he could not provide treatment notes because he had not obtained "the consent of both parties" but in a Medical Source Statement indicated that Duffy was

---

[13] *See* R. at 712-713.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] R. at 152.
[18] Doc. No. 14 at 8-9.
[19] *Id.* at 9. The Court notes that "[t]hese assessments are not necessarily contradictory" because Dr. Mitchell's opinions were about Duffy's "ability to function in a work setting" while the treatment notes cited here were describing Duffy's condition at the time of the examinations. *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 356 (3d Cir. 2008) (explaining that the Court of Appeals has "admonished ALJs who have used such reasoning, noting the distinction between a doctor's notes for purposes of treatment and that doctor's ultimate opinion on the claimant's ability to work."). The same is true of the fact that Dr. Mitchell usually assigned Duffy a global assessment of functioning ("GAF") score that was quite high, but as Dr. Mitchell explained, if Duffy were "placed in a job setting" his GAF would collapse. R. at 713.

3

markedly limited in his ability to understand or carry out complex instructions, and in the ability to make judgments on complex work-related decisions.[20] Dr. Lundeen further determined that Duffy "[c]an't sustain concentration at work. Understands work to be done but intrusive thoughts invade working space."[21]

On the other hand, Dr. Gregory Coleman, a psychologist who met with Duffy for a one-time consultative examination on March 11, 2014, concluded that "[t]he results of the examination appear to be consistent with psychiatric problems, but in itself does not appear significant enough to interfere with the claimant's ability to function on a daily basis."[22] Similarly, Dr. Erin Urbanowicz, a psychologist who did not examine Duffy but reviewed certain medical records for the agency and assessed Duffy's mental RFC, wrote that Duffy could "meet the basic mental demands of competitive work" because "[t]he claimant can perform simple, routine, repetitive work in a stable environment. The claimant can understand, retain, and follow simple job instructions, i.e., perform one and two-step tasks."[23]

Dr. Urbanowicz's assessment was included in the Disability Determination Explanation that she, along with Disability Examiner Judith Deluca, prepared. The Disability Determination Explanation contained a number of sections including Evidence of Record, Findings of Fact, Weighing of Opinion Evidence, Physical RFC,[24] Mental RFC,[25] and Signatures, which showed that the report was signed by Dr. Urbanowicz on March 18, 2014, and by Deluca on June 17, 2014.[26]

The ALJ's determination of Duffy's residual functional capacity rested on the significant

---

[20] R. at 602-07.
[21] *Id*.
[22] R. at 598.
[23] R. at 158-59.
[24] This section was specifically prepared by Deluca.
[25] This section was specifically prepared by Dr. Urbanowicz.
[26] R. at 150-161.

4

weight she placed on the medical opinions of Drs. Coleman and Urbanowicz.[27] The ALJ gave only "some weight" to Dr. Lundeen's opinion "due to the lack of supporting documentation" and "little weight" to Dr. Mitchell's opinion.[28]

Plaintiff sought review of the ALJ's conclusions, contending in relevant part that the ALJ erred in weighing more heavily the opinion evidence from Drs. Coleman and Urbanowicz than evidence from his treating practitioner, Dr. Mitchell. The R&R determined that because "Dr. Urbanowicz almost certainly did not see Dr. Mitchell's treatment notes, which were submitted only one day before she issued her analysis of the record . . . it is not entirely clear whether the ALJ's decision not to credit the findings of [Dr. Mitchell] was supported by substantial evidence."[29] Therefore, the R&R recommended that the case "be remanded to the agency to permit an agency expert to issue a new analysis after reviewing the medical record as a whole, including Dr. Mitchell's treatment records."[30] The Commissioner now objects to the R&R on the grounds that: 1) the ALJ reviewed the medical record as a whole, including Dr. Mitchell's treatment records; 2) the ALJ properly weighed those medical opinions; and 3) Dr. Urbanowicz did review all materials, including the Dr. Mitchell's records.

## II. STANDARD OF REVIEW

A district court reviews those sections of the R&R to which objections have been filed *de*

---

[27] Doc. No. 8-2 at 24.
[28] *Id.* The ALJ gave little weight to Dr. Mitchell's opinion for a number of reasons. The ALJ asserted that Dr. Mitchell's opinion was not supported by the available treatment records. R. at 25. The ALJ also listed evidence, including that Duffy had worked part-time as a cafeteria worker in 2013, that he had performed volunteer work, that he could drive and perform household chores and projects, that Duffy showed "no evidence of deterioration in his condition since he stopped working full-time in 2009, or since he stopped working part-time in 2013," and that during the hearing Duffy testified that he was experiencing the "clickies" but he "continued to testify without difficulty and seemed able to focus adequately." R. at 25. The ALJ also correctly did not provide weight to Dr. Mitchell's conclusion that Duffy was "totally disabled" because this a determination reserved to the Commissioner. *See Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 n.2 (3d Cir. 2008).
[29] Doc. No. 14 at 13.
[30] *Id.*

*novo*, and may "accept, reject, or modify, in whole or in part, the findings or recommendations" of the magistrate judge.[31] Although the review is *de novo*, the court is permitted by statute to rely on the magistrate judge's proposed recommendation to the extent the court, in its exercise of sound discretion, deems proper.[32]

This Court's review of the denial of disability benefits is limited to determining whether the denial is supported by substantial evidence.[33] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[34] This standard is "less than a preponderance of the evidence but more than a mere scintilla."[35] As such, if the ALJ's factual findings are based on the correct legal standards and supported by substantial evidence, a reviewing court is bound by them, "even if [the court] would have decided the factual inquiry differently."[36]

### III. DISCUSSION

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'"[37] This is because "a treating physician can "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from [other sources]."[38]

---

[31] 28 U.S.C. § 636(b)(1)(C).
[32] *United States v. Raddatz*, 447 U.S. 667, 676 (1980).
[33] *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).
[34] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted).
[35] *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).
[36] *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citations omitted).
[37] *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer*, 186 F.3d at 429).
[38] *Yensick v. Barnhart*, 245 F. App'x 176, 181 (3d Cir. 2007) (quoting 20 C.F.R. § 404.1527(d)(2)). In this Order, the Court cites to the edition of the Code of Federal Regulations in force at the time of the ALJ's decision in this case. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 n.1 (3d Cir. 2019).

Accordingly, an ALJ "is not free to employ her own expertise against that of a physician who presents competent medical evidence."[39] However, when the record contains conflicting medical evidence, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'"[40] Therefore, "[w]hile contradictory medical evidence is required for an ALJ to reject a treating physician's opinion outright, such an opinion may be afforded 'more or less weight depending upon the extent to which supporting explanations are provided.'"[41]

When an ALJ articulates a specific reason for giving a treating physician's report little weight, a district court must "evaluate whether substantial evidence supports that determination."[42] "In particular, the opinions of non-treating physicians must be examined for whether, and how well, these opinions take account of and explain all of the other evidence in the record, including the opinions of treating physicians."[43] The regulations in place during the relevant time echo this point, providing:

> [B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including medical opinions of treating and other examining sources.[44]

It appears that Dr. Urbanowicz, the non-treating physician whose opinion the ALJ assigned "significant weight," did not review Dr. Mitchell's treatment records or medical opinions. Dr. Mitchell's medical opinions were contained in the Medical Source Statement he completed on December 18, 2015, and in his letter completed on January 4, 2016. But Dr. Urbanowicz completed her assessment on March 18, 2014. Therefore, Dr. Urbanowicz could not

---

[39] *Plummer*, 186 F.3d at 429 (citation omitted); *see also Yensick*, 245 F. App'x at 181.
[40] *Id.* (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)).
[41] *Brownawell*, 554 F.3d at 355 (quoting *Plummer*, 186 F.3d at 429).
[42] *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014).
[43] *Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 663 (D. Del. 2008); *see also Tucker v. Colvin*, 117 F. Supp. 3d 594, 609 (D. Del. 2015); *Colgan v. Astrue*, No. 08-970, 2009 WL 3183087, at *8 (W.D. Pa. Sept. 30, 2009).
[44] 20 C.F.R. § 416.927(c)(3).

have considered these opinions.

The Disability Determination Explanation also indicates that in Dr. Urbanowicz's assessment she did not consider Dr. Mitchell's treatment records, which were added to the file only the day before she submitted her assessment. The Findings of Fact section, which appears to have been written by Dr. Urbanowicz,[45] referenced Dr. Coleman's consultative exam and explained that, in that exam, Duffy reported treatment consistent with Dr. Lundeen's records.[46] The Findings of Fact further explained, though, that "SSA was unable to obtain those records" due to HIPAA regulations.[47] The Findings of Fact also stated that Duffy had "reported multiple treating sources whose records were not able to be obtained despite attempts at securing them."[48]

The Findings of Fact never mention Dr. Mitchell's records. Considering that Dr. Mitchell's records were only added to the file on March 17, 2014—one day before Dr. Urbanowicz signed the assessment—it appears that, when the Findings of Fact referred to "multiple treating sources whose records were not able to be obtained despite attempts at securing them," it meant that Dr. Urbanowicz did not have Dr. Mitchell's and Dr. Lundeen's records before her.[49] There is no indication of any other records from a treating medical source that the Findings of Fact could have been referencing.

Moreover, Dr. Mitchell was missing from the list of "Treating Sources with medical opinions."[50] Dr. Lundeen is listed as a "source of evidence" but there is no mention of Dr. Mitchell—Duffy's treating psychiatrist of 14 years.[51] The exclusion of Dr. Mitchell's report

---

[45] The Disability Determination Explanation does not indicate whether it was Dr. Urbanowicz or Deluca who prepared the Findings of Fact. However, because this part of the Findings of Fact reports on Duffy's mental health, which was Dr. Urbanowicz's purview, the Court will assume that these are Dr. Urbanowicz's Findings of Fact.
[46] R. at 154.
[47] *See id.*
[48] *Id.*
[49] *Id.*
[50] R. at 156.
[51] *Id*.

8

from this section further supports the R&R's conclusion that Dr. Urbanowicz likely did not consider Dr. Mitchell's treatment records.

Furthermore, the Additional Explanation section attached to Dr. Urbanowicz's assessment of Duffy's Mental RFC Assessment, notes that "[t]he opinion stated within the report received 03/12/2014 provided by Dr. Coleman, an examining source, has been considered. The residual functioning capacity assessment is consistent with the opinion contained in the report received . . . the report submitted is given great weight and is adopted in this assessment."[52] Once again, it appears that Dr. Urbanowicz did not consider Dr. Mitchell's records, which were received only one day before she signed the report.[53]

In its Objections, the Commissioner argues that because, in the Additional Explanation section, Dr. Urbanowicz also says that Dr. Coleman's opinions are "fairly consistent with the other evidence in file," this demonstrates that Dr. Urbanowicz did consider Dr. Mitchell's reports.[54] However, in the context of the report, this statement appears to refer to other evidence, such as Duffy's work history.

The Commissioner also points to two other places in the record—the Evidence of Record section detailed at the top of the Disability Determination Explanation and the Notice of Disapproved Claim—where Dr. Mitchell's records are explicitly referenced as evidence that Dr. Urbanowicz did consider those treatment records.[55] However, the Notice of Disapproved Claim was not completed by Dr. Urbanowicz and, instead, simply indicated that the Social Security

---

[52] R. at 159.
[53] The Court notes that Dr. Urbanowicz's review of Dr. Coleman's report did not provide any insight into Dr. Mitchell's medical records because Dr. Coleman also did not consider Dr. Mitchell's records. Consistent with the fact that his report was submitted on March 11, 2014—six days before Dr. Mitchell's records were added to the file—Dr. Coleman specifically provided that the "[m]aterials given" were the "IMA history form parts 1 and 2 and function report adult discussion of difficulties with stress and anxiety." R. at 595. As in Dr. Urbanowicz's report, there is no mention of Dr. Mitchell's records or opinions whatsoever.
[54] Doc. No. 4 (quoting R. at 159).
[55] *See id.* (citing R. at 152, 162).

9

Administration had Dr. Mitchell's reports, not that Dr. Urbanowicz considered them.[56]

Moreover, the reference to Dr. Mitchell's records in the Evidence of Record section does not either provide substantial evidence that Dr. Urbanowicz considered those records.[57] First, the evidence suggests that Deluca, and not Dr. Urbanowicz, completed this section. The Evidence of Record section contains several entries for evidence received well past the March 18, 2014 date that Dr. Urbanowicz signed her assessment, including evidence from a physical evaluation received on May 19, 2014, and evidence from the Fox Chase Cancer Center received on April 5, 2014.[58]

Second, when an ALJ decides to credit a non-treating physician over a treating physician, the ALJ must determine "the degree" to which the non-treating physician considered the opinions of the treating physicians.[59] Nothing in the body of the report shows that Dr. Urbanowicz actually took these extensive records into account and incorporated them into the report, especially considering the timing.

In sum, recognizing that treating physicians, and especially treating physicians with a lengthy history treating the claimant, are the best source of medical opinions, the regulations required that Dr. Urbanowicz consider the opinions and records of Dr. Mitchell[60]—the only medical opinion in the record that provided "a detailed, longitudinal picture of [Duffy's] medical impairment(s)."[61] Because the record does not support a finding that Dr. Urbanowicz did so, the ALJ's decision to credit Dr. Urbanowicz over Dr. Mitchell is not supported by substantial

---

[56] R. at 162-166 (explaining that "[d]octors and other trained staff looked at this case and made this decision.").
[57] Doc. No. 4. (citing R. at 152).
[58] R. at 151.
[59] 20 C.F.R. § 416.927(c)(3); *Gonzalez*, 537 F. Supp. 2d at 663.
[60] 20 C.F.R. § 416.927(c)(3) (requiring that the weight accorded to the opinions of non-treating physicians "depend on the degree to which they provide supporting explanations for their opinions" after "consider[ing] all of the pertinent evidence.").
[61] 20 C.F.R. § 404.1527(d)(2).

10

evidence.[62] Therefore, remand is warranted so that, consistent with the applicable regulations, "if the Commissioner is to give significant weight to the opinion of one or more non-treating physicians, the Commissioner must be assured that such non-treating physicians considered, and explained the value of, the treating physicians' opinions."[63]

**AND NOW**, this 3rd day of December 2019, upon consideration of Plaintiff's Brief and Statement of Issues in Support of Request for Review [Doc. No. 9], Defendant's Response [Doc. No. 12], Plaintiff's Reply to Response [Doc. No. 13], the R&R of United States Magistrate Judge Jacob P. Hart [Doc. No. 14], Defendant's Objections to the R&R [Doc. No. 15], and Plaintiff's Response thereto [Doc. No. 17], and after careful, independent review of the complete administrative record, it is hereby **ORDERED** that:

1. The Clerk is directed to **REMOVE** the case from Civil Suspense;
2. Defendant's Objections to the R&R [Doc. No. 15] are **OVERRULED**;
3. The R&R [Doc. No. 23] is **APPROVED** and **ADOPTED**; and
4. The case is **REMANDED** to the Commissioner of Social Security for further action consistent with this Order and the R&R.

It is so **ORDERED.**

**BY THE COURT:**

**/s/ Cynthia M. Rufe**

**CYNTHIA M. RUFE, J.**

---

[62] Therefore, the ALJ rejected the medical judgment of the treating physician based on his own "lay opinion" because there was no "contradictory medical evidence" in the record. *Morales*, 225 F.3d at 317; *Ruiz v. Comm'r of Soc. Sec.*, 262 F. App'x 379, 381 (3d Cir. 2008). As explained, neither Dr. Urbanowicz nor Dr. Coleman were able to contradict Dr. Mitchell because they did not have his opinions when they submitted their report.

[63] *Gonzalez*, 537 F. Supp. 2d at 664.